ANDREW L. SCHLAFLY
  (admitted *pro hac vice*)
General Counsel
Association of American Physicians
and Surgeons, Inc.
  New Jersey Bar No. 04066-2003
  939 Old Chester Rd.
  Far Hills, NJ 07931
  Phone:  (908) 719-8608
  Fax:  (908) 934-9207
*Attorney for Plaintiffs Association of*
*American Physicians & Surgeons, Inc.,*
*and Eileen Natuzzi, M.D.*

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ASSOCIATION OF AMERICAN PHYSICIANS & SURGEONS, INC., AND EILEEN NATUZZI, M.D., | ) ) ) ) Civil Action |
| Plaintiffs, | ) ) |
| vs. | ) No. 2:16-cv-02441-MCE ) |
| SHELLEY ROUILLARD, in her official capacity as the Director of the California Department of Managed Health Care, | ) ) ) ) |
| Defendant. | ) ) ) |

**AMENDED COMPLAINT**

The Association of American Physicians & Surgeons, Inc. ("AAPS") and

Eileen Natuzzi, M.D. ("Dr. Natuzzi" and, collectively, "Plaintiffs") seek

declaratory and injunctive relief against Shelley Rouillard, in her official capacity

as the Director of the California Department of Managed Health Care, as follows:

### NATURE OF THE ACTION

1.      California Assembly Bill No. 72 (the "Act" or "AB 72") was signed into law on September 23, 2016, and became effective on July 1, 2017.

2.      AB 72 is unconstitutional by imposing a mandatory dispute resolution process that is cost-prohibitive for many physicians in terms of time and fees, thereby depriving physicians of their procedural rights to challenge underpayments in a feasible manner.  The dispute resolution process imposed by AB 72 violates the Due Process Clause of the Fourteenth Amendment of the U.S. Constitution ("Due Process Clause") for physicians who are noncontracting ("out-of-network") with health care service plans ("health plans").  The implementation of AB 72 has resulted in substantial losses to physicians, including Plaintiff Dr. Natuzzi and members of Plaintiff AAPS.

3.      The implementation of AB 72 also violates the Takings Clause of the Fifth Amendment of the U.S. Constitution ("Takings Clause") by causing a sharp, unreasonable decline of 25% in payments to out-of-network physicians for services rendered, which is below their true economic costs and investment-backed expectations with respect to some of their medical services, and is thereby confiscatory.

4.      Finally, AB 72 is contrary to federal law, and preempted by it, concerning the rights of physicians who have opted out of, or disenrolled from, Medicare ("Opted-Out Physicians").  Opted-Out Physicians are allowed under federal law to agree to private contracts with patients for payment of services,

2

pursuant to federal regulations.  But AB 72 imposes a different, more burdensome set of requirements for entering into a private contract with a patient for services provided.  This violates the Supremacy Clause of the U.S. Constitution, Article VI, Clause 2 ("Supremacy Clause").

5.     These violations of constitutional rights by AB 72 cause ongoing harm to out-of-network and opted-out AAPS members who practice in California, and to Plaintiff Dr. Natuzzi.

6.     Plaintiff AAPS, on behalf of its members in California, and Plaintiff Dr. Natuzzi seek declaratory and injunctive relief under 42 U.S.C. § 1983 and the equitable powers of this Court to enjoin these ongoing violations of the U.S. Constitution.

## THE PARTIES

7.     Plaintiff AAPS is a not-for-profit membership organization incorporated under the laws of Indiana and headquartered in Tucson, Arizona. Founded in 1943, AAPS has members in virtually every specialty.  Many AAPS members are out-of-network with health plans, and many have opted-out of or are disenrolled from Medicare.  These members of AAPS in California are harmed by the violations of the U.S. Constitution by AB 72.  The protection of AAPS members from unconstitutional action is central to AAPS's mission on behalf of its members.

8.     Plaintiff Eileen Natuzzi, M.D. ("Dr. Natuzzi") is a resident of California, and is a surgeon practicing in Encinitas, California.

9.     Defendant Shelley Rouillard ("Defendant")  is a defendant in her official capacity as the Director of the California Department of Managed Health Care ("DMHC").  DMHC is the agency authorized and responsible to execute the laws of California relating to health care service plans under the Knox-Keene Health Care Service Plan Act of 1975.  Defendant Rouillard is the executive authorized to oversee the regulation of health plans in California, and to implement AB 72 with respect to health plans.

**JURISDICTION AND VENUE**

10.     This Court has subject matter jurisdiction over this case under 28 U.S.C. § 1331, as this action arises under the Fifth and Fourteenth Amendments to the U.S. Constitution, the Supremacy Clause, and federal law; and under 28 U.S.C. § 1343(a)(3) and 42 U.S.C. § 1988(a), in that this action is brought to redress deprivations, under color of state law, of rights, privileges and immunities secured by the U.S. Constitution.

11.     Venue is proper in the United States District Court for the Eastern District of California under 28 U.S.C. § 1391(b) in that a substantial part of the events or omissions giving rise to the claims occurred here.  All acts alleged herein of Defendant, her officers, agents, servants, employees, or persons acting at her behest or direction, were done and continue to be done under the color of state law.

**Standing**

12.    Members of Plaintiff AAPS, including California ophthalmologist Michael Couris, M.D., suffer ongoing financial harm due to the denial of their rights under the Due Process, Takings, and Supremacy Clauses from the implementation of AB 72.

13.    Among the membership of Plaintiff AAPS in California are Opted-Out Physicians who have a federal right to enter into private contracts with Medicare-enrolled patients for private payment for services rendered.  These members of AAPS suffer ongoing financial harm due to the implementation of AB 72, which prohibits Opted-Out Physicians from receiving private payments from Medicare-enrolled patients for services provided at in-network facilities, unless the different and more burdensome consent requirements of AB 72 are satisfied.  A substantial percentage of patients are older than 65 and thus are Medicare-enrolled, and AB 72 is causing losses to Opted-Out Physicians by infringing on their federal right to receive payment from these patients at a privately agreed rate.

14.    Plaintiff Dr. Natuzzi has standing based on losses she has already suffered due to the implementation of AB 72, in the form of a loss of 25% of her revenue in 2018 due to reduced reimbursements by health plans.  These injuries to Plaintiff Dr. Natuzzi are ongoing and continuous.

15.    The requested declaratory and injunctive relief will prevent these injuries, and does not require the participation of individual AAPS members.  The protection of its members from these constitutional violations is central to AAPS's

purpose.

## FACTUAL BACKGROUND

16.     Effective beginning July 1, 2017, AB 72 requires the following for

out-of-network (noncontracting) physicians:

> unless otherwise agreed to by the noncontracting individual health
> professional and the plan, the plan shall reimburse the greater of the
> average contracted rate or 125 percent of the amount Medicare reimburses
> on a fee-for-service basis for the same or similar services in the general
> geographic region in which the services were rendered. For the purposes of
> this section, "average contracted rate" means the average of the contracted
> commercial rates paid by the health plan or delegated entity for the same or
> similar services in the geographic region. This subdivision does not apply
> to subdivision (c) of Section 1371.9 or subdivision (b) of this section.

The Act § 2(a) (adding Section 1371.31 to the Health and Safety Code).

17.     AB 72 prohibits an out-of-network physician from recovering fully

on his or her claims for services lawfully rendered.  Specifically, the Act requires

that for health plans issued on or after July 1, 2017:

> If the noncontracting individual health professional has received more than
> the in-network cost-sharing amount from the enrollee for services subject to
> this section, the noncontracting individual health professional shall refund
> any overpayment to the enrollee within 30 calendar days after receiving
> payment from the enrollee.

The Act § 3(a)(4)(A) (adding Section 1371.9 to the Health and Safety Code).

18.     This ban in AB 72 on out-of-network physicians receiving

significant payment from enrollees has the effect of preventing these physicians

from recovering their full reasonable fees for services rendered, and instead limits

the physicians to merely whatever amounts the health plans choose to pay.

19.     In addition, AB 72 has required since September 1, 2017, that out-

of-network physicians must participate in the Non Emergency Services Independent Dispute Resolution Process ("AB 72 IDRP") for any disputes on payments to them, rather than pursue their remedies directly in court. The AB 72 IDRP requires that physicians first engage in a time-consuming internal process with the health plans before even reaching the arbitration-like process, which then charges a minimum of $315 as a fee even though the amount in dispute may be less than that.

20.     While AB 72 purportedly exempts medical services rendered on an emergency basis, Defendant's implementation of AB 72 has caused plans to decrease payments by an unreasonable 25% to out-of-network physicians, including Plaintiff Dr. Natuzzi, on all services including those provided on an urgent or emergency basis.

21.     This abrupt, unreasonable reduction by 25% in payments to out-of-network physicians under AB 72, without any feasible legal recourse for physicians under the mandatory AB 72 IDRP and pre-IDRP procedures imposed by the implementation of the Act, has caused a decrease in the availability of timely medical services to patients.

**FIRST CLAIM FOR RELIEF**
**(UNDER SECTION 1983**
**FOR VIOLATION OF THE DUE PROCESS CLAUSE OF**
**THE U.S. CONSTITUTION)**

22.     Plaintiffs repeat and incorporate herein by reference the allegations contained in all the other Paragraphs in this Amended Complaint.

7

23.    The mandatory AB 72 IDRP, and pre-IDRP, procedures for physicians who are underpaid by health plans violate the Due Process Clause by creating a cost-prohibitive impediment to challenging underpayments.

24.    The implementation of AB 72 requires that physicians first participate in a cumbersome, futile internal review process with the health plan, and then be subjected to a dispute-resolution fee with the AB 72 IDRP which is often larger than the amount in dispute.  By imposing this unfeasible procedure, Defendant's implementation of AB 72 renders the process too expensive and too time-consuming for Plaintiff Dr. Natuzzi and AAPS members to contest underpayments by health plans on individual claims.

25.    Plaintiffs seek a declaratory judgment that AB 72, as applied, constitutes a violation of the Due Process Clause with respect to its imposition of the expensive, impractical procedure for challenging underpayments.

26.    Plaintiffs seek an injunction prohibiting enforcement of AB 72 with respect to its mandatory procedures for challenging underpayments.

27.    Plaintiffs request attorneys' fees under 42 U.S.C. § 1988(b).

**SECOND CLAIM FOR RELIEF**
**(UNDER SECTION 1983**
**FOR VIOLATION OF THE TAKINGS CLAUSE**
**OF THE U.S. CONSTITUTION)**

28.    Plaintiffs repeat and incorporate herein by reference the allegations contained in all the other Paragraphs in this Amended Complaint.

29.    Out-of-network members of AAPS and Plaintiff Dr. Natuzzi have

seen a sudden, unreasonable decrease of roughly 25% in their reimbursements by health plans based on the implementation of AB 72.

30.     This unreasonable, abrupt decrease of 25% in payments to out-of-network members of AAPS and Plaintiff Dr. Natuzzi is contrary to their investment-backed expectations for their medical practices, which include the immense time and money spent on their training and current office expenses.

31.     This sudden decrease in payments due to AB 72 is akin to rent control that abruptly reduces the allowable rent by 25% in merely one year, which would be invalid under the Takings Clause.

32.     In addition, the implementation of AB 72 has rendered it economically unfeasible for out-of-network AAPS members to take as much on-call in connection with the Emergency Room, as the implementation of AB 72 has decreased reimbursements for some of these services below their true economic costs, and thus the reduced reimbursements are thereby confiscatory.

33.     Plaintiffs are entitled to a declaratory judgment that AB 72 is an unconstitutional violation of the Takings Clause.

34.     Plaintiffs are entitled to an injunction against the restrictions in AB 72 on out-of-network physicians, based on the Takings Clause.

35.     Plaintiffs request attorneys' fees under 42 U.S.C. § 1988(b).

### THIRD CLAIM FOR RELIEF
### (FOR FEDERAL PREEMPTION
### UNDER THE SUPREMACY CLAUSE)

36.     Plaintiffs repeat and incorporate herein by reference the allegations

contained in all the other Paragraphs in this Amended Complaint.

37.     Federal law, namely Section 4507 of the Balanced Budget Act of 1997 (42 U.S.C.S. § 1395a), authorizes Opted-Out Physicians to enter into private contracts with patients who are Medicare beneficiaries to obtain agreed-upon fees for services rendered.

38.     AB 72, however, prohibits Opted-Out Physicians from collecting agreed-upon fees for non-emergency or non-urgent services rendered at hospitals that participate with Medicare, as virtually all hospitals do.

39.     As a result, AB 72 prohibits Opted-Out Physicians from collecting anything for their services rendered to Medicare beneficiaries, other than perhaps a small co-pay or payments based on agreements that comply with the onerous requirements of Section 3(c) of the Act.   The vast majority of patients over 65 years old are Medicare beneficiaries.   AB 72 is contrary to federal law and denies the Opted-Out Physicians fair compensation for their services to these patients.

40.     AB 72 expressly provides that:

(1) Except [when there is coverage for out-of-network services] … a health care service plan contract issued, amended, or renewed on or after July 1, 2017, shall provide that if an enrollee receives covered services from a contracting health facility at which, or as a result of which, the enrollee receives services provided by a noncontracting individual health professional, the enrollee shall pay no more than the same cost sharing that the enrollee would pay for the same covered services received from a contracting individual health professional. This amount shall be referred to as the "in-network cost-sharing amount."

(2) An enrollee shall not owe the noncontracting individual health professional more than the in-network cost-sharing amount for

services subject to this section. At the time of payment by the plan to the noncontracting individual health professional, the plan shall inform the enrollee and the noncontracting individual health professional of the in-network cost-sharing amount owed by the enrollee.

(3) A noncontracting individual health professional shall not bill or collect any amount from the enrollee for services subject to this section except for the in-network cost-sharing amount. …

The Act § 3(a) (adding Section 1371.9 to the Health and Safety Code).

41.     The foregoing requirements of AB 72 interfere with, in violation of federal law, the ability of Opted-Out Physicians to receive payment for services rendered at hospitals, which are in-network with Medicare and health plans that are funded in whole or in part by Medicare, including being in-network with Medicare Advantage health plans.

42.     There is no feasible way to sever and strike this unconstitutional interference by AB 72 with the foregoing federal law that authorizes physicians to opt out and privately contract with patients for unrestricted agreed-upon fees.

43.     Moreover, AB 72 lacks a severability clause that would even allow severing and striking the portion that conflicts with federal law in order to save the remainder of the statute.

44.     Plaintiffs are entitled to a declaratory judgment that AB 72 is an unconstitutional violation of the Supremacy Clause.

45.     Plaintiffs are entitled to an injunction against these restrictions in AB 72 on out-of-network physicians, based on the Supremacy Clause.

46.     Plaintiffs request attorneys' fees under 42 U.S.C. § 1988(b).

## Jury Demand

47.    Plaintiffs request a trial by jury for all issues triable by jury.

## Prayer For Relief

Wherefore, Plaintiffs respectfully request the following relief:

(i)    declaratory relief that the AB 72 is unconstitutional under the Due Process, Takings, and/or Supremacy Clauses of the U.S. Constitution, and in violation of 42 U.S.C. § 1983;

(ii)    injunctive relief blocking enforcement of AB 72 as unconstitutional under the Due Process, Takings, and/or Supremacy Clauses of the U.S. Constitution, and in violation of 42 U.S.C. § 1983;

(iii)    reasonable attorneys' fees and costs under 42 U.S.C. § 1988(b) as appropriate; and

(iv)    such other relief as the Court may deem appropriate.

Dated:  April 30, 2018           Respectfully submitted,

/s/ Andrew L. Schlafly
Andrew L. Schlafly
  (admitted *pro hac vice*)
General Counsel Association of
  American Physicians & Surgeons, Inc.
New Jersey Bar No. 04066-2003
939 Old Chester Rd.
Far Hills, NJ 07931
Phone:  (908) 719-8608
Fax:  (908) 934-9207

*Attorney for Plaintiff Association of*
*American Physicians & Surgeons, Inc.,*
*and Eileen Natuzzi, M.D.*

**CERTIFICATE OF SERVICE**

I, Andrew L. Schlafly, counsel for Plaintiffs Association of American Physicians & Surgeons, Inc., and Eileen Natuzzi, M.D., do certify that on April 30, 2018, I electronically filed the foregoing document using the Electronic Case Filing system, which I understand to have caused electronic service on all parties that have appeared in this matter.

Respectfully submitted,

/s/ Andrew L. Schlafly

Andrew L. Schlafly
*Attorney for Plaintiff Association of*
*American Physicians & Surgeons, Inc.,*
*and Eileen Natuzzi, M.D.*