XAVIER BECERRA, State Bar No. 118517
Attorney General of California
NIROMI W. PFEIFFER, State Bar No. 154216
Supervising Deputy Attorney General
DARRELL W. SPENCE, State Bar No. 248011
Deputy Attorney General
　1300 I Street, Suite 125
　P.O. Box 944255
　Sacramento, CA 94244-2550
　Telephone: (916) 210-6089
　Fax: (916) 324-5567
　E-mail: Darrell.Spence@doj.ca.gov
*Attorneys for Defendant Department of Managed Health Care*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ASSOCIATION OF AMERICAN PHYSICIANS & SURGEONS, INC., and EILEEN NATUZZI, M.D.,<br><br>　　　　　　　　　　Plaintiffs,<br><br>　v.<br><br>SHELLEY ROUILLARD, in her official capacity as the Director of the California Department of Managed Health Care,<br><br>　　　　　　　　　　Defendants. | 2:16-cv-02441 MCE-EFB<br><br>**REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF MOTION TO DISMISS**<br><br>Date:　　　　September 6, 2018<br>Time:　　　　2:00 p.m.<br>Courtroom:　　7<br>Judge:　　　　Hon. Morrison C. England, Jr.<br>Trial Date:　　None Set<br>Action Filed: October 13, 2016 |

**ITEMS TO BE JUDICIALLY NOTICED**

In support of the motion to dismiss filed herewith, Defendant Shelley Rouillard, in her official capacity as the Director of the California Department of Managed Health Care ("DMHC"), respectfully requests that this Court take judicial notice of following documents:

///

///

///

1

| Exhibit | Document Description | Pages |
|---|---|---|
| 1 | DMHC Guidance re: Surprise Medical Bills, Frequently Asked Questions Dated June 2017 A true and correct copy of this document is attached hereto as Exhibit 1[1] | 1-2 |
| 2 | DMHC Publication: AB 72 Uniform Written Procedures and Guidelines Dated September 1, 2017 A true and correct copy of this document is attached hereto as Exhibit 2[2] | 1-12 |

The documents are relevant to Plaintiffs' allegations that the Act applies to Medicare plans and emergency services. Also, the documents are relevant the allegation that the Act's independent dispute resolution process is too costly and burdensome.

## LEGAL ANALYSIS

### I. OVERVIEW OF THE CHALLENGED LEGISLATION

AB 72 shields insured patients from "surprise medical bills." These are bills received by patients for treatment, unbeknownst to them, from an out-of-network health professional for services accompanying treatment at an in-network health facility. It also ensures that out-of-network providers are reasonably reimbursed for their services by (1) either an agreed upon rate; (2) a default payment rate based, in part, on geographical areas; or (3) participation in an independent dispute resolution process that gives out-of-network providers the option to resolve their disputes with health care service plans short of formal litigation.

Plaintiffs assert that the Act is unconstitutional because the Act's reimbursement provisions do not adequately compensate out-of-network providers for their services. Specifically, Plaintiffs allege that the Act is invalidly applied to Medicare plans and emergency services, and that the Act's independent dispute resolution process is too costly and burdensome. Plaintiffs seek

---

[1] Can also be found here: https://dmhc.ca.gov/Portals/0/HealthCareInCalifornia/FactSheets/fsab72.pdf
[2] Can also be found here: https://ab72idrp.maximus.com/idrpportal/public/docs/AB72_Uniform_Written_Procedures_and_Guidelines.pdf

2

declaratory and injunctive relief prohibiting the implementation of the Act and claim that it runs contrary to the Due Process, Taking, and Supremacy clauses in U.S. Constitution.

## II. THE SUBJECT DOCUMENTS SHOULD BE JUDICIALLY NOTICED

Federal Rule of Evidence 201 permits a court to take judicial notice of facts not subject to reasonable dispute that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." (Fed. R. Evid. 201(b).) Accordingly, "a court may take judicial notice of matters of public record." (*Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001).) A court may also take judicial notice of "records and reports of administrative bodies." (*Mack v. S. Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986).) Finally, a court may take judicial notice of an administrative agencies' published regulatory guidance. (*California Sportfishing Prot. All. v. Shiloh Grp., LLC*, 268 F.Supp.3d 1029, 1038 (N.D. Cal. 2017); *see also Porrazzo v. Bumble Bee Foods, LLC*, 822 F.Supp.2d 406, 411-412 (S.D.N.Y. 2011).)

The documents that are the subject of the instant request (Exhibits 1 and 2) should be judicially noticed because: (1) they are matters of public record that are available on the DMHC website; and (2) they are records of an administrative body, constituting regulatory guidance.

The documents are relevant to Plaintiffs' allegations that the Act applies to Medicare plans and emergency services. Also, the documents are relevant the allegation that the Act's independent dispute resolution process is too costly and burdensome.

///
///
///
///
///
///
///
///
///

# CONCLUSION

For the reasons cited above, Defendant respectfully requests that this Court take judicial notice of the above referenced documents.

Dated: June 21, 2018                    Respectfully Submitted,

XAVIER BECERRA
Attorney General of California
NIROMI W. PFEIFFER
Supervising Deputy Attorney General


*/S/ Darrell W. Spence*
DARRELL W. SPENCE
Deputy Attorney General
*Attorneys for Defendant Department of Managed Health Care*

SA2016104310
13119355.docx

# EXHIBIT 1

DEPARTMENT OF Managed Health Care — **Surprise Medical Bills**

## New Law Protects Consumers from Surprise Medical Bills

A new law created by Assembly Bill (AB) 72[1] (Bonta, Chapter 492, Statutes of 2016) protects consumers from surprise medical bills when they go to in-network facilities such as hospitals, labs or imaging centers. This new consumer protection starts July 1, 2017, and makes sure consumers only have to pay their in-network cost sharing. Providers now cannot send consumers out-of-network bills when the consumer did everything right and went to an in-network facility.

**Consumer Quick Facts:**

- **No Surprise Medical Bills:** Health care consumers are no longer put in the middle of billing disputes between health plans and out-of-network providers. Consumers can only be billed for their in-network cost-sharing, when they use an in-network facility.

- **Prevents Collections:** Protects consumers from having their credit hurt, wages garnished, or liens placed on their primary residence.

- **Helps Control Health Care Costs:** Health plan payments for out-of-network services are no longer based on sticker price.

## Frequently Asked Questions:

**What is a surprise bill, and why would I get one?**

Here are some examples of when consumers have gotten surprise bills:

- A consumer had a surgery at a hospital or outpatient surgery center in their health plan network, but the anesthesiologist was not in their health plan network. Even though the consumer did not have a choice in who their anesthesiologist was, that provider sends a bill to the consumer after the surgery. This is a surprise bill.

- A consumer goes to a lab or imaging center in their health plan network for tests and the doctor who reads the results is not in their health plan network. That doctor then bills the consumer for their services creating a surprise bill.

Under AB 72, consumers should no longer receive these surprise bills. This means when you go to a health care facility like a hospital or a lab in your health plan network, and end up with a doctor who is not in your health plan network, they cannot charge you more than you would have to pay for an in-network doctor.

---

980 9th Street, Suite 500
Sacramento, CA 95814

1-888-466-2219
HealthHelp.ca.gov

HAVE A PROBLEM
WITH YOUR HEALTH PLAN?
CONTACT THE DMHC HELP CENTER

CaliforniaDMHC
@CADMHC
CaliforniaDMHC

DEPARTMENT OF Case 2:16-cv-02441-TLN-EFB Document 34-2 Filed 06/21/18 Page 7 of 20
Managed
Health Care    Surprise Medical Bills

June 2017

# Frequently Asked Questions:

### What should I pay?

Consumers who go to an in-network facility only have to pay for in-network cost-sharing (co-pays, co-insurance, or deductibles). Consumers should contact their health plan if they have questions about their in-network cost-sharing.

### What is a Health Plan Network?

A health plan network is the group of doctors, hospitals and other health care providers a health plan contracts with to provide health care services to its members. These providers are called "network providers," "contracted providers" or "in-network providers." A provider who does not contract with your health plan is called an "out-of-network provider" or "non-contracted providers."

Examples of health care facilities that are in a health plan network include hospitals, ambulatory surgery centers or other outpatient settings, laboratories, and radiology or imaging centers.

### What If I Received a Surprise Bill? And What If I Already Paid?

If you received a surprise bill and already paid more than your in-network cost share (co-pay, co-insurance or deductible) file a grievance/complaint with your health plan with a copy of the bill. Your health plan will review your grievance and should tell the provider to stop billing you. If you do not agree with your health plan's response or they take more than 30 days to fix the problem, you can file a complaint with the Department of Managed Health Care, the state regulator of health plans. You can file a complaint by visiting www.HealthHelp.ca.gov or calling 1-888-466-2219.

### Does the New Law Apply to Everyone?

The law applies to people in health plans regulated by the Department of Managed Health Care or the California Department of Insurance. It does not apply to Medi-Cal plans, Medicare plans or "self-insured plans." If you do not know what kind of plan you are in you can call the DMHC Help Center at 1-888-466-2219 for help.

### What If I Want to See a Doctor Who I Know is Out-of-Network?

If you are in a health plan with an out-of-network benefit, such as a PPO, you can choose to go to an out-of-network provider. You have to give your permission by signing a form in writing at least 24 hours before you receive care. The form should inform you that you can receive care from an in-network provider if you so choose. The form should be in your language if you speak English, Spanish, Vietnamese, Cantonese, Armenian, Russian, Mandarin, Tagalog, Korean, Arabic, Hmong, Farsi, or Cambodian.

---

[1] AB 72 protects consumers receiving non-emergency services at in-network facilities from being balanced billed by an out-of-network provider. California law already protects most consumers from balance billing for emergency services.

980 9th Street, Suite 500
Sacramento, CA 95814

1-888-466-2219
HealthHelp.ca.gov

HAVE A PROBLEM
WITH YOUR HEALTH PLAN?
CONTACT THE DMHC HELP CENTER

CaliforniaDMHC
@CADMHC
CaliforniaDMHC

June 2017

EXHIBIT 2



Edmund G. Brown Jr., Governor
State of California
Health and Human Services Agency

**DEPARTMENT OF MANAGED HEALTH CARE**
980 9th Street, Suite 500, Sacramento, CA 95814-2725
Toll-Free: 1-877-525-1295 | Fax: 916-255-2282
Email: AB72IDRP@dmhc.ca.gov
www.HealthHelp.com

## AB 72 UNIFORM WRITTEN PROCEDURES AND GUIDELINES

HSC §1371.30(b)(1)[1]: The department shall establish uniform written procedures for the submission, receipt, processing, and resolution of claim payment disputes pursuant to this section and any other guidelines for implementing this section.

## 1   SUBMISSION

1.1   Required Filing of Delegated Entity Report by Licensed Health Plans

    1.1.1   Licensed health care service plans may delegate payment function to various entities (Delegated Entities). The Department of Managed Health Care (DMHC) AB 72 Independent Dispute Resolution Process (IDRP) allows a health plan to name a delegated entity as the responsible payor for purposes of the IDRP. Once a delegated entity is named by the health plan, the delegated entity is required to participate in the IDRP (see HSC §1371.30(f)). Notwithstanding delegation, the health plan is ultimately responsible for implementing the IDRP decision (see HSC §1371.30(d)).

    1.1.2   In order to conduct the IDRP, the DMHC will require all licensed health plans to submit electronically a current list of the health plan's delegated entities (hereinafter, "Delegated Entity Report"). If a health plan does not delegate payment function to any delegated entities, the Delegated Entity Report shall state that the health plan does not delegate payment function.

    1.1.3   The Delegated Entity Report must be submitted electronically to the DMHC's Office of Plan Licensing (OPL) via the eFiling webportal pursuant to CCR §1300.41.8. The Delegated Entity Report must be submitted on an annual basis. <u>Each health plan's first Delegated Entity Report must be submitted by November 15, 2017.</u> Subsequent reports are due by November 15th of each year. In the event that there are no changes to a health plan's previously filed Delegated Entity report, the health plan is required to submit a Delegated Entity Report that states there are no changes to report.

    1.1.4   At a minimum, the Delegated Entity Report must contain:
- The name and title of the individual(s), including at least one (1) alternate contact, at the health plan responsible for receiving and responding to communications from the DMHC for purposes of the IDRP, including the individual's e-mail address and direct telephone number, with extension, if applicable.
- The name of each delegated entity
- Accurate and current contact information for each delegated entity, including mailing address and telephone number.

---

[1] References to "HSC" are to the Knox-Keene Health Care Service Plan Act (Act), as codified in the California Health and Safety Code, Section 1340, et seq. References to "CCR" are to the regulations promulgated pursuant to the Knox-Keene Health Care Service Plan Act, found at Title 28, Division 1, Chapter 2, California Code of Regulations, beginning with Section 1300.43.

- The name and title of the individual(s), including at least one (1) alternate contact, at the delegated entity responsible for receiving and responding to communications from the DMHC for purposes of the IDRP, including the individual's e-mail address and direct telephone number, with extension, if applicable.

1.2 Registration
    1.2.1 All prospective parties to IDRP must register with the online IDRP portal in order to submit an IDRP Application or respond to an IDRP Application. Each provider and payor must create an Administrator account that will be responsible for approving the registrations of each user sub-account. Providers will be required to input a National Provider Identifier (NPI) number upon registration.
    1.2.2 The prospective parties to IDRP include health plans, delegated entities, and noncontracting individual health professionals. Physician groups, independent practice associations, or other entities authorized to act on behalf of a noncontracting individual health professional may also initiate and participate in the IDRP.

1.3 IDRP Application
    1.3.1 An Initiating Party must complete an IDRP Application online using the DMHC's external IDRP portal. The IDRP Application form is entirely web-based. IDRP Applications will not be accepted outside of the IDRP portal and there is no parallel paper process for the IDRP. The Application includes required data fields related to claims processing and billing. The information needed to complete these data fields should be readily available to the Initiating Party on the claim form(s), Explanation(s) of Benefits (EOBs), and Provider Dispute Resolution (PDR) determination letter(s) for the claim(s) that are in dispute.

1.4 Required Supporting Documents:
    1.4.1 The following documents **must** be included with an IDRP Application in order for it to be processed by the DMHC:
- Claim Form(s)
- Provider Dispute Resolution (PDR) Determination Letter(s)
    - Note: If a provider attempted PDR, but did not receive an acknowledgment letter or determination letter from the Payor and at least 45 business days have passed since the date of receipt[2] of the provider dispute, the provider may submit dated proof of the PDR attempt in lieu of a PDR determination letter. In accordance with CCR §1300.71.38(d)(2), the 45 business day period shall be extended in situations where a provider dispute is returned and must be amended.
- Explanation(s) of Benefits or Remittance Advice

1.5 Narrative Summary Justification
    1.5.1 In addition to the required supporting documents, a complete IDRP Application should include a narrative summary justification that addresses all information relevant to the Initiating Party's suggested appropriate reimbursement amount for the claim(s) at issue, including, but not limited to, the factors set forth in CCR §1300.71(a)(3)(B)(i)-(vi). These factors are listed here:
        i. the provider's training, qualifications, and length of time in practice;
        ii. the nature of the services provided;
        iii. the fees usually charged by the provider;

---

[2] "Date of receipt" is defined at CCR §1300.71.38(a)(3).

      iv. prevailing provider rates charged in the general geographic area in which the services were rendered;
      v. other aspects of the economics of the medical provider's practice that are relevant; and
      vi. any unusual circumstances in the case.
  1.5.2 Although not required, this narrative summary justification is very important. It is the Initiating Party's chance to make its case and show that its suggested reimbursement amount is appropriate. The narrative summary justification should be well-organized and should cite or reference supporting documentation and evidence where applicable. All cited or referenced materials should be uploaded with the IDRP Application.
  1.5.3 The DMHC will not impose a page-limit on the narrative summary justification.

1.6 Other Relevant Supporting Documents
  1.6.1 The Initiating Party may also submit any other documents that it believes to be relevant to the suggested appropriate reimbursement amount for the claim(s) at issue and that it would like the independent review organization to consider when making an IDRP decision. It is the Initiating Party's responsibility to <u>explain</u> the relevance of this documentation in its narrative summary justification.
  1.6.2 The independent organization conducting the IDRP will consider only the information and documents timely submitted to the DMHC by the parties to the dispute when rendering a decision. Therefore, it is the IDRP participant's responsibility to include all documents and information relevant to the appropriate reimbursement amount with the IDRP Application.
  1.6.3 The DMHC will not impose a page limit on the supporting documents submitted with the IDRP Application.

1.7 General Guidelines
  1.7.1 All claims in an IDRP Application must be for services rendered on or after July 1, 2017.
  1.7.2 All claims in an IDRP Application must be for non-emergency services. If there is an unresolved dispute as to whether the health care services at issue are non-emergent, the claim(s) do not qualify for the IDRP.
  1.7.3 All claims in an IDRP Application must be for covered services provided at a contracting health facility, or provided as a result of covered services at a contracting health facility, by a noncontracting individual health professional.
  1.7.4 Prior to submitting an IDRP Application, the PDR process must be completed with either the health plan or the applicable delegated entity (see HSC §1371.30(a)(2)). An Initiating Party is not required to complete PDR with both the health plan and the delegated entity if each entity maintains a separate PDR process. Required proof of completed PDR is a final PDR determination letter.
- Note: If a provider attempted PDR, but did not receive an acknowledgment letter or determination letter from the Payor and at least 45 business days have passed since the PDR attempt, the provider may submit dated proof of the PDR attempt in lieu of a PDR determination letter. In accordance with CCR §1300.71.38(d)(2), the 45 business day period shall be extended in situations where a provider dispute is returned and must be amended.
  1.7.5 Claims are eligible for the IDRP for 365-days from the final PDR date of determination.[3] If the provider attempted PDR, but the payor was non-responsive, the 365-day limit will run after 45 business days have passed since the date of receipt of the provider dispute.[4] In

---

[3] "Date of Determination" is defined at CCR §1300.71.38(a)(4).
[4] "Date of receipt" is defined at CCR §1300.71.38(a)(3).

3

2017-09-01

the event that a claim is submitted to the IDRP, but disqualified due to a curable defect in the IDRP Application, the time during which the initial IDRP Application was pending with the DMHC is not included in the 365-day limit.

1.7.6 A dentist, licensed pursuant to the Dental Practice Act (Chapter 4 (commencing with Section 1600) of Division 2 of the Business and Professions Code) is not a "noncontracting individual health professional" for purposes of the IDRP and cannot participate in the IDRP.

1.7.7 Medi-Cal managed health care service plans or any other entity that enters into a contract with the State Department of Health Care Services pursuant to Chapter 7 (commencing with Section 14000), Chapter 8 (commencing with Section 14200), and Chapter 8.75 (commencing with Section 14591) of Part 3 of Division 9 of the Welfare and Institutions Code are excluded from the IDRP and cannot participate in the IDRP.

1.8 Bundled Claims

1.8.1 An Initiating Party may "bundle" up to 50 claims in a single IDRP Application if the claims meet the following conditions (see HSC §1371.30(b)(3)):
- all claims must be for services provided by the same individual health professional;
- all claims must have the same payor (health plan or delegated entity);
- all claims must be for the same or similar services

1.8.2 A single claim within a bundle must contain Current Procedural Terminology (CPT) codes or Healthcare Common Procedure Coding System (HCPCS) codes.

1.8.3 Required supporting documents (as described in Section 1.4) must be submitted for each claim within a bundle (e.g., PDR must be complete for each individual claim).

1.8.4 IDRP Applications that include improperly bundled claims will be rejected and closed. The DMHC will electronically send the Initiating Party a closing letter explaining why the IDRP Application was rejected through the IDRP portal. If the Initiating Party chooses to proceed with all or some of the claim(s), it must submit a new IDRP Application.

1.8.5 An IDRP Application is assigned a case ID# and each bundled claim receives a sub-ID # (e.g., ID-1700001, ID-1700001-1). The IDRP Application requires documents and other information for bundled claims to be inputted at both the case level and the claim level. The IDRP portal includes functionality to identify which documents are relevant to specific claim(s) within a bundle. All documents uploaded within the IDRP portal should be identified by claim where possible. Documents uploaded to the IDRP Application will be sent to the independent organization without reformatting or other changes.

1.8.6 An IDRP Application with bundled claims will be allowed only a single narrative summary justification document. However, the parties to the IDRP are free to organize the narrative by claim, if applicable.

1.8.7 Any bundles exceeding 50 claims must be submitted in separate IDRP Applications. For example, 100 similar claims meeting the conditions in HSC §1371.30(b)(3) must be submitted in at least two (2) separate IDRP Applications that contain up to 50 bundled claims.

1.9 Confidentiality of IDRP Application

1.9.1 IDRP Application information identifying the claim(s) at issue will be shared with the applicable opposing party for purposes of determining (i) whether the DMHC has jurisdiction over the claim(s), and, if relevant, (ii) whether the Health Plan will be participating in the IDRP or delegating participation to a delegated entity. The information that will be shared for these purposes includes, for each claim, the:

4

2017-09-01

- Subscriber name
- Patient name
- Patient ID#
- Patient date of birth (DOB)
- Dates of Service (DOS)
- Provider name
- Facility name[5]
- Claim Number

1.9.2 Following identification of the opposing party participating in the IDRP, <u>the Initiating Party's complete IDRP Application will be viewable by both parties and the independent organization reviewing the dispute</u>.

1.9.3 It is each IDRP participant's responsibility to redact all proprietary, confidential, or protected health information that should not be viewed by the DMHC, the independent organization, or parties to the IDRP. Additionally, it is each IDRP participant's responsibility to redact all identifying information relating to patient claims that are not the subject of the IDRP from documents uploaded to the IDRP portal.

## 2 RECEIPT

2.1 Intake - IDRP Application Review

2.1.1 After an Initiating Party submits the IDRP Application, a dated Acknowledgment of IDRP Application Submission will be electronically forwarded to the Initiating Party using the e-mail address listed in the registration process.

2.1.2 DMHC Intake Staff will do an initial review of the complete IDRP Application to confirm that the Initiating Party has identified the applicable health plan for all claim(s) contained in the IDRP Application.

2.1.3 Once an Initiating Party has submitted an IDRP Application, an Opposing Party (either the noncontracting individual health professional or the health plan/delegated entity) is required to participate in the IDRP by law (see HSC §1371.30(a)(3)).

2.2 Request for Opposing Party Response I (ROPR I)

2.2.1 If the Initiating Party is a noncontracting individual health professional, the DMHC will send a ROPR I communication to the health plan through the IDRP portal. The ROPR I is entirely web-based. ROPR I responses will not be accepted outside of the IDRP portal and there is no parallel paper process for the ROPR I. The ROPR I requires the health plan to confirm or deny DMHC jurisdiction over the claim(s) at issue. If the health plan confirms DMHC jurisdiction, it must also indicate whether it is the responsible payor for purposes of participating in the IDRP or if it has delegated payment function to a delegated entity that will be participating in the IDRP. Even if the health plan names a delegated entity in its response to ROPR I, the health plan is ultimately responsible for implementing the IDRP decision (see HSC §1371.30(d)).

2.2.2 The ROPR I communication contains the following data fields collected from the IDRP Application that will allow the health plan to identify the claim(s) and accurately respond:
- Subscriber name
- Patient name
- Patient ID#

---

[5] For purposes of DMHC IDRP, "facility" means (i) the contracting health facility where the service(s) at issue were provided, or (ii) the contracting health facility where the provision of covered services resulted in the service(s) at issue.

- Patient date of birth (DOB)
- Dates of Service (DOS)
- Provider name
- Facility name[6]
- Claim Number

2.2.3 If the health plan indicates that it is not the responsible payor for purposes of participating in the IDRP, the health plan will not have access to the IDRP Application or any documents uploaded as part of the IDRP Application going forward. However, the health plan will have access to selected case status information in order to monitor whether the delegated entity has fulfilled its obligation to participate in the IDRP.

2.2.4 If the health plan names a delegated entity as the responsible payor for purposes of the IDRP, the health plan will be required to select the delegated entity from a list of pre-registered entities, or provide accurate and current contact information for the delegated entity if the name does not appear on the list of pre-registered entities.

2.2.5 If the health plan names a delegated entity as the responsible payor for purposes of the IDRP, then the delegated entity is required to participate in the IDRP (see HSC §1371.30(f)).

2.3 Closing Non-Jurisdictional Claims

2.3.1 If the health plan indicates in its ROPR I response that the claim(s) at issue are not within the DMHC's jurisdiction, the DMHC will close the IDRP Application using the "Non-Jurisdictional" close reason and will electronically issue a closing letter to the parties.

2.3.2 If the health plan states that the DMHC does not have jurisdiction, it should specify in its ROPR I response the specific regulatory body that does have jurisdiction over the claim(s) at issue (i.e. California Department of Insurance, etc.), DMHC Intake Staff will include this information in the closing letter.

2.4 Request for Opposing Party Response II (ROPR II)

2.4.1 After the DMHC receives a ROPR I response and confirms jurisdiction and the contact information for the Opposing Party, the DMHC will electronically send a ROPR II notification to the Opposing Party through the IDRP portal.

2.4.2 The ROPR II is the Opposing Party's opportunity to fully respond to the Initiating Party's IDRP Application. When the Opposing Party receives the ROPR II, the Opposing Party will have access to the IDRP Application, including every document uploaded by the Initiating Party as part of the IDRP Application. This includes the Initiating Party's narrative summary justification document. It is the DMHC's expectation that an Opposing Party will address any inaccurate information contained in the IDRP Application and/or any arguments raised in the narrative summary justification.

2.4.3 The Opposing Party must complete the ROPR II online, through the IDRP portal. The ROPR II is entirely web-based. ROPR II responses, including communications or documentation of any kind, will not be accepted outside of the portal and there is no parallel paper process for providing a ROPR II response. The ROPR II includes data fields related to claims processing and claims payment. The information needed to complete these data fields should be readily available to the Opposing Party within the documents associated with the previously completed PDR process.

2.4.4 The ROPR II response does not <u>require</u> certain document uploads to be deemed complete. However, it is the Opposing Party's responsibility to provide any information

---

[6] For purposes of DMHC IDRP, "facility" means (i) the contracting health facility where the service(s) at issue were provided, or (ii) the contracting health facility where the provision of covered services resulted in the service(s) at issue.

6

2017-09-01

and documents it believes to be relevant to its suggested appropriate reimbursement amount for the claim(s) at issue as part of the ROPR II response.

2.4.5 In addition to optional supporting documents, a complete ROPR II response should include the Opposing Party's narrative summary justification that addresses all information relevant to its suggested appropriate reimbursement amount for the claim(s) at issue. The narrative summary justification should address any evidence offered by the Initiating Party concerning the factors set forth in CCR §1300.71(a)(3)(B)(i)-(vi), listed here:
   i. the provider's training, qualifications, and length of time in practice;
   ii. the nature of the services provided;
   iii. the fees usually charged by the provider;
   iv. prevailing provider rates charged in the general geographic area in which the services were rendered;
   v. other aspects of the economics of the medical provider's practice that are relevant; and
   vi. any unusual circumstances in the case.

2.4.6 The Opposing Party's narrative summary justification should be well-organized and should cite or reference supporting documentation and evidence where applicable. All cited or referenced materials should be uploaded with the ROPR II response.

2.4.7 The DMHC will not impose a page-limit on the Opposing Party's narrative summary justification.

2.4.8 The Opposing Party may also submit any other documents that it believes to be relevant to the appropriate reimbursement amount for the claim(s) at issue and that it would like the independent organization to consider when making an IDRP decision.

2.4.9 The independent organization conducting the IDRP will consider only the information and documents timely submitted through the IDRP portal by the parties to the dispute when rendering a decision. Therefore, it is the IDRP participant's responsibility to include all documents and information relevant to its suggested appropriate reimbursement amount with the ROPR II response.

2.4.10 The DMHC will not impose a page limit on the supporting documents submitted with the ROPR II response.

2.5 Failure to Respond to ROPR I or ROPR II

2.5.1 If a health plan fails to timely respond to ROPR I, the DMHC's Provider Complaint Unit will refer the matter to the DMHC' Office of Enforcement for the possible imposition of administrative or civil penalties (Enforcement Action).

2.5.2 If an Opposing Party fails to timely respond to ROPR II, the case will proceed to the independent organization to commence billing. If both the Initiating Party and Opposing Party remit IDRP review fees, the independent organization will consider only the information and documents timely submitted through the IDRP portal by the Initiating Party when reaching an IDRP decision.

2.5.3 If an Opposing Party fails to timely respond to ROPR II, the case will proceed to the independent organization. If the Initiating Party remits its share of the IDRP review fee, but the Opposing Party does not, the independent organization will issue a Default Decision awarding the Initiating Party its full requested reimbursement amount.

2.5.4 If a delegated entity fails to respond to any communications from the DMHC during the IDRP, the health plan that has delegated payment function to that delegated entity may be subject to an Enforcement Action.

2017-09-01

## 3    PROCESSING

3.1   IDRP Application and ROPR II Review

    3.1.1   The DMHC will conduct a first-look review of the complete IDRP Application and ROPR II response to determine whether any uploaded documents are illegible, missing pages, or contain inapplicable protected health information, and cannot be sent to the independent organization conducting the IDRP.

    3.1.2   If the DMHC determines that certain documents need to be redacted or re-uploaded due to illegibility or other technical errors, the DMHC will contact the appropriate party to the IDRP to resolve the issue electronically through the IDRP portal using a Request for Information (RFI) communication.

    3.1.3   If a party does not timely respond to the RFI communication, any affected document(s) will undergo review by the DMHC and independent organization in its present condition.

    3.1.4   Once the DMHC has resolved any technical issues with the IDRP Application and ROPR II response, the DMHC will begin evaluating the case to determine whether it qualifies for the IDRP.

3.2   Qualifying a Case for the IDRP

    3.2.1   It is the DMHC's responsibility to qualify cases for the IDRP prior to billing and review by the independent organization conducting the IDRP.

    3.2.2   The DMHC must confirm the following information in a case before qualifying the case for the IDRP:

- All claims in the case must be for services rendered on or after July 1, 2017.
- All claims in the case must be for non-emergency services. If there is an unresolved dispute as to whether the health care services at issue are non-emergent, the claim(s) do not qualify for the IDRP.
- All claims in the case must be for covered services provided at a contracting health facility, or provided as a result of covered services at a contracting health facility by a noncontracting individual health professional.
- If the case contains bundled claims, all claims in the case must be for the same or similar services
- All claims in the case must be accompanied by valid proof of completed PDR with either the health plan or the applicable delegated entity (see HSC §1371.30(a)(2)). Valid proof of completed PDR is a final PDR determination letter. The only exception to this requirement is in circumstances where a provider attempted PDR, but did not receive an acknowledgment letter or determination letter from the Payor and at least 45 business days have passed since the date of receipt[7] of the provider dispute. In this limited circumstance, dated proof of the provider's PDR attempt is valid proof of PDR. In accordance with CCR §1300.71.38(d)(2), the 45 business day period shall be extended in situations where a provider dispute is returned and must be amended.
- All claims in the case must be submitted to the IDRP within 365-days from the final PDR date of determination.[8] If the provider attempted PDR, but the payor was non-responsive, the 365-day limit will run after 45 business days have passed since the date of receipt of the provider dispute.[9] In the event that a claim is submitted to the IDRP, but disqualified due to a curable defect in the

---

[7] "Date of receipt" is defined at CCR §1300.71.38(a)(3).

[8] "Date of Determination" is defined at CCR §1300.71.38(a)(4).

[9] "Date of receipt" is defined at CCR §1300.71.38(a)(3).

IDRP Application, the time during which the initial IDRP Application was pending with the DMHC is not included in the 365-day limit.
- The noncontracting individual health professional cannot be a dentist, licensed pursuant to the Dental Practice Act (Chapter 4 (commencing with Section 1600) of Division 2 of the Business and Professions Code).
- The health plan cannot be a Medi-Cal managed health care service plan or any other entity that enters into a contract with the State Department of Health Care Services pursuant to Chapter 7 (commencing with Section 14000), Chapter 8 (commencing with Section 14200), and Chapter 8.75 (commencing with Section 14591) of Part 3 of Division 9 of the Welfare and Institutions Code..

3.2.3 If a case qualifies for the IDRP, the DMHC will draft a qualification memorandum (in a format to be determined by DMHC) for the independent organization conducting the IDRP.

3.2.4 The qualification memorandum will ask the independent organization conducting the IDRP to respond to the same question in every case: Based on all relevant information submitted by the parties, what is the appropriate reimbursement amount for each CPT and/or HCPCS code billed by the provider?

3.2.5 If an Initiating Party indicates in its Application, or an Opposing Party indicates in its ROPR II response, that a dispute exists as to whether the claims at issue are properly coded (i.e. upcoding, downcoding, etc.), the qualification memorandum will include an additional question: Based on all relevant information submitted by the parties, are the claims at issue appropriately coded for the purpose of calculating the reimbursement amount, and if the claims are not properly coded, what is the appropriate reimbursement amount for each of the claims, as appropriately coded? When a qualification memorandum contains this additional question, the parties will be charged the higher "Standard rate including coding review" rate as stated in Section 4.2.5, below.

3.2.6 The qualification memorandum will be electronically sent to the independent organization to commence billing and resolution.

3.3 Disqualifying a Case for the IDRP

3.3.1 If a case is not qualified for the IDRP, the DMHC will draft a disqualification memorandum (in a format to be determined by DMHC) that provides a detailed explanation as to why the case is not qualified and which documents and/or other information the DMHC relied on in reaching its conclusion.

3.3.2 The DMHC will electronically send the applicable closing letter to both parties to the IDRP through the IDRP portal. The closing letter will include the close reason.

3.3.3 The DMHC will close the case in the IDRP portal.

## 4 RESOLUTION

4.1 Independent Organization Intake

4.1.1 The DMHC is contracted with an independent organization (Maximus, Inc.) that conducts IDRP proceedings. The independent organization is independent of either party to the IDRP (see HSC §1371.30(c)(1)).

4.1.2 Upon receipt of the qualification memorandum from the DMHC, the independent organization will commence intake, billing, assignment, and review of a case.

4.2 Pre-Payment/Billing

4.2.1 Reasonable and necessary fees for the purpose of administering the IDRP will be split equally between the parties (see HSC §1371.30(b)(2)).

- 4.2.2 Payment of IDRP fees is billed and collected solely by the independent organization conducting the IDRP.
- 4.2.3 All IDRP fees will be paid electronically through the IDRP portal.
- 4.2.4 All IDRP fees will be collected before the independent organization commences review of the IDRP and prior to the issuance of a Decision Letter.
- 4.2.5 IDRP fees increase based on the number of claims bundled within a case. A list of current IDRP fees is as follows:

Standard rate (no dispute over correct coding of claims)

$315 per review
$315 per review of 2-10 substantially similar claims
$340 per review of 11-25 substantially similar claims
$395 per review of 26-50 substantially similar claims

Standard rate including coding review

$330 per review
$330 per review of 2-10 substantially similar claims
$355 per review of 11-25 substantially similar claims
$415 per review of 26-50 substantially similar claims

- 4.2.6 Once a case is qualified for the IDRP by the DMHC, and the independent organization collects payment from the Initiating Party, the case cannot be withdrawn and any funds remitted by the parties will not be refunded.
- 4.2.7 The Initiating Party is billed for IDRP first. After the Initiating Party timely remits its IDRP fee, the Opposing Party is billed.
- 4.2.8 If an Initiating Party fails to timely remit payment for the IDRP, the independent organization will notify the DMHC. The DMHC will close the case and electronically send a closing letter to both parties to the IDRP.
- 4.2.9 If an Initiating Party timely remits its share of the IDRP review fee, but the Opposing Party does not, the independent organization will issue a Default Decision awarding the Initiating Party its full requested reimbursement amount.

4.3 Review Guidance
- 4.3.1 The independent organization will have a maximum of thirty (30) calendar days following receipt of payment to complete its review of a case and provide the DMHC with an IDRP Decision Letter.
- 4.3.2 The review organization's IDRP Decision regarding the appropriate reimbursement amount for the claim(s) at issue shall be based on all relevant information as submitted by the parties to the IDRP (see HSC §1371.30(b)(5)).
- 4.3.3 The relevant information considered by the independent organization includes, but is not limited to, information submitted by the parties regarding the factors set forth in CCR §1300.71(a)(3)(B)(i)-(vi), listed here:
    - i.   the provider's training, qualifications, and length of time in practice;
    - ii.  the nature of the services provided;
    - iii. the fees usually charged by the provider;
    - iv.  prevailing provider rates charged in the general geographic area in which the services were rendered;
    - v.   other aspects of the economics of the medical provider's practice that are relevant; and
    - vi.  any unusual circumstances in the case.

10

2017-09-01

4.3.4 The IDRP Decision drafted by the independent organization will provide a written explanation of the appropriate reimbursement amount decision, and will include a list of appropriate reimbursement amounts by relevant CPT and/or HCPCS code.

4.3.5 The independent organization will electronically communicate all IDRP Decisions to the DMHC for final approval and distribution to the IDRP parties through the IDRP portal.

4.4 IDRP Decision

4.4.1 IDRP Decision Letters, including IDRP Default Decision Letters, will not be distributed to the parties before final approval (to confirm application of IDRP guidelines, professional drafting, and formatting) by the DMHC.

4.4.2 Once an IDRP Decision Letter (or Default Decision Letter) is approved, the DMHC will electronically send the IDRP Decision Letter and DMHC cover letter to both parties to the IDRP through the IDRP portal.

4.4.3 The decision obtained through the IDRP is binding on both parties. The health plan and delegated entity, if applicable, shall implement the decision obtained through the IDRP. If dissatisfied, either party to the IDRP may pursue any right, remedy, or penalty established under any other applicable law (see HSC §1371.30(d)).

## 5 TIME PERIOD TO RESPOND TO IDRP COMMUNICATIONS

5.1 Paperless IDRP

5.1.1 The IDRP is entirely electronic and is conducted through the IDRP portal. There is no parallel paper process for the IDRP, and documents will not be accepted or considered outside of the IDRP portal. To ensure maximum security, all documents uploaded to the IDRP portal must be in Portable Document Format (.PDF).

5.2 Response Deadlines

5.2.1 The following response deadlines apply for each communication type within the IDRP portal. Deadlines begin to run on the business day following electronic transmittal of the communication through the IDRP portal. [Example: RFI communication sent by DMHC on Friday, September 15th. The 5-day deadline begins to run on Monday, September 18th. Assuming no intervening State holidays, the response is due by 11:59 p.m. on Friday, September 22nd.]:

| | |
|---|---|
| Time to Respond to RFI: | 5 business days |
| Time to Respond to ROPR I: | 5 business days |
| Time to Respond to ROPR II: | 20 business days |
| Time for Initiating Party to remit fee: | 30 calendar days |
| Time for Opposing Party to remit fee: | 30 calendar days |

11

2017-09-01

## ACRONYMS

| | |
|---|---|
| AB 72: | Assembly Bill 72 (Bonta 2016) |
| CPT: | Current Procedural Terminology |
| DMHC: | California Department of Managed Health Care |
| EOB: | Explanation of Benefits |
| HCPCS: | Healthcare Common Procedure Coding System |
| IDRP: | Independent Dispute Resolution Process |
| NPI: | National Provider Identifier |
| PDF: | Portable Document Format |
| PDR: | Provider Dispute Resolution |
| RFI: | Request for Information |
| ROPR I: | Request for Opposing Party Response I |
| ROPR II: | Request for Opposing Party Response II |